# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ENCORE BENEFIT MANAGEMENT, INC.,<br>**Plaintiff,**<br>v.<br>PHOENIX BENEFITS MANAGEMENT, LLC,<br>**Defendant.** | CIVIL NO. 18-1788 (RAM)<br>18-1821 (Member Case) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is *Defendant Phoenix Benefits Management, LLC's Motion to Stay Proceedings and Compel Arbitration* (Docket No. 33). Having considered the parties' submissions in support and in opposition of said motion, the Court **GRANTS** Defendant's motion at Docket No. 33 and **ORDERS** Encore Benefits Management, Inc. ("EBM") to arbitrate its claims against Phoenix Benefits Management, LLC ("Phoenix"). Also pending before the court is EBM's *Motion for a Preliminary Injunction* and Phoenix's opposition thereto. (Docket Nos. 12-1 at 4-13 and 40). The Court hereby **DENIES** EBM's request for a preliminary injunction at Docket 12-1 for Plaintiff's failure to show irreparable harm and provide verified allegations. Lastly, given that all of the parties' claims are subject to arbitration, this action is **DISMISSED WITHOUT PREJUDICE.**

## I.   BACKGROUND

This case arises from the demise of the contractual relationship between plaintiff Encore Benefits Management, Inc. ("EBM" or "Plaintiff") and defendant Phoenix Benefits Management, LLC. ("Phoenix" or "Defendant"). On January 12, 2016, the parties entered into a service contract entitled "Phoenix PBM/Encore Agreement". (Docket Nos. 12-1 ¶ 2; 15 ¶ 5; and 33 at 1). Under the Phoenix PBM/Encore Agreement, Phoenix would provide 340B testing and inventory management services to 340B qualified pharmacies operated by EBM. (Docket No. 33-2 at 11-12).[1] EBM in turn would provide bedside delivery of prescriptions to patients among other services. Id. at 12. The parties agreed to split the revenues collected from "the Hospital" after deduction of expenses. Id. at 13.

---

[1] The Department of Health and Human Services describes the 340B Drug Pricing Program as follows:

> The 340B Program provides discounts on outpatient drugs to certain safety net health providers, including Title X agencies. The program's intent is to allow safety net providers to increase patient services with the savings realized from participation in the 340B program. Providers typically save 25-50% on outpatient drug costs through participation in the program. These savings can be used to reduce the price of pharmaceuticals for patients, expand services offered to patients, or provide services to more patients.
>
> Outpatient prescription drugs, over the counter drugs (accompanied by a prescription), and clinic-administered drugs within eligible facilities are covered. Vaccines and inpatient drugs are not covered.

See https://www.hhs.gov/opa/grants-and-funding/340b-drug-pricing-program/index.html (last visited on November 12, 2019).

EBM initiated this action through a *Complaint* filed on June 9, 2018 before the Court of First Instance, San Juan Superior Part. (Docket No. 33-3). Succinctly stated, EBM alleges that "*since the beginning of the contractual relationship between EBM and Phoenix, EBM has entered into and maintained service contracts for the 340B Program with the Damas, San Lucas, and Menonita Hospitals. (hereinafter, "EBM's clients").*" Id. ¶ 5. EBM further alleges that Phoenix breached its contractual obligation to provide information necessary for Encore to fulfill its obligations to its clients. Id. ¶¶ 8, 13-14. Lastly EBM, alleges that Phoenix approached Hospital Menonita to provide services directly to said hospital without EBM's consent and copied the hospital on a letter of termination of the Phoenix PBM/Encore Agreement in which Phoenix demanded that EBM pay $449,563. Id. ¶¶ 22, 31. Premised on these allegations, EBM asserts claims for breach of contract and for tortious interference with the contractual relationship between EBM and its clients. Id. at 7-10. EBM seeks $1,116,416 in damages. Id. at 10.

Phoenix removed this action on October 18, 2018. (Docket No. 1). And on November 1, 2018, Phoenix also filed a *Notice of Removal* in Civil No. 18-1821 (JAG) in which it invoked its right to arbitrate. That latter removed action was consolidated with the instant case on February 26, 2019. (Docket No. 29).

On November 6, 2018, Phoenix filed an *Answer and Counterclaim* seeking to collect the $449,563 from Encore. (Docket No. 15). The latter answered said *Counterclaim* on November 17, 2018. (Dkt. No. 23).

On April 12, 2019, Phoenix filed its *Motion to Stay Proceedings and Compel Arbitration*. (Docket No. 33). Encore filed its opposition to the motion to compel arbitration on April 15, 2019. (Docket No. 35).

## II. APPLICABLE LAW

### A. Compelling Arbitration under Section 2 of the Federal Arbitration Act:

Under First Circuit precedent, "[i]n deciding a motion to compel arbitration, a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" Gove v. Career Systems Development Corp., 689 F. 3d 1, 4 (1st Cir. 2012) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir.2008)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *See* AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011).

Section 2 of the Federal Arbitration Act ("FAA") provides:

> **A written provision in** any maritime transaction or **a contract evidencing a transaction involving commerce**

> **to settle by arbitration a controversy thereafter arising out of such contract or transaction,** or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, **shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.**

9 U.S.C. § 2. (Emphasis added). The United States Supreme Court has stated that this statute "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Therefore, section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id. at 24-25.

Given the liberal federal policy favoring arbitration agreements established by the FAA, "**as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability**." Id. at 24-25 (emphasis added). Indeed, it is well-settled that questions of arbitrability must be dealt with a high regard for the federal policy in favor of arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of

arbitration. *See* Colón de Sánchez v. Morgan Stanley Dean Witter, 376 F.Supp.2d 132, 135 (D.P.R. 2005); Carro v. Parade of Toys, Inc., 950 F. Supp. 449, 451-452 (D.P.R. 1996); Cardona Tirado v. Shearson Lehman American Exp., Inc., 634 F. Supp. 158, 159 (D.P.R. 1986).

**B. Stay or Dismissal of the Action under the FAA:**

Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties **stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. (emphasis added). In other words, once a party adequately demonstrates that the claims pending before the court are subject to arbitration pursuant to a valid, written, arbitration agreement, the FAA directs the court to stay the proceedings pending the completion of the arbitration. See 9 U.S.C. § 3.

However, in the First Circuit, courts may dismiss rather than stay the action when <u>all</u> the issues before the court are arbitrable. *See* Ponce Roofing, Inc. v. Roumel Corp., 190 F. Supp. 2d 264, 267 (D.P.R. 2002) (quoting Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 n. 21 (1st Cir.1998); Sea-Land Serv., Inc.

v. Sea-Land of Puerto Rico, Inc., 636 F. Supp. 750, 757 (D.P.R.1986)); Garcia v. Maine General Health, 2018 WL 6071998, at *6 (D. Me. 2018), adhered to on reconsideration, 2019 WL 1433755 (D. Me. 2019), appeal dismissed, 2019 WL 5208842 (1st Cir. 2019), and appeal dismissed, 2019 WL 5208842 (1st Cir. 2019).[2]

### III. ANALYSIS

#### A. A Written agreement to arbitrate exists:

Section 8.5.1 of the Phoenix PBM/Encore Agreement provides in the relevant part:

> To promote the rapid and economical resolution of any disputes which may arise, any and all disputes or claims related to or arising from this Agreement, except those identified in Section (d) below, shall be resolved by final, binding and confidential arbitration conducted in San Juan, Puerto Rico by the American Arbitration Association ("AAA") under the applicable AAA commercial rules.

(Docket. 33-1 at 6-7).

EBM argues that the arbitration clause is "null and void" because it contains language which alludes to exceptions to the obligation to arbitrate but fails to specify or define such exceptions. (Docket No. 35 ¶ 8-9). Therefore, Plaintiff contends that although the arbitration clause states that "any and all disputes or claims related to or arising from this Agreement, **except those identified in Section (d) below,**" given that no such

---

[2] The Court notes, that based upon the plain language of § 3 of the FAA, the Second Circuit has rejected the practice of dismissal in lieu of a stay. See Katz v. Cellco Partnership, 794 F.3d 341 (2nd Cir. 2015) (noting Circuit split).

"Section (d)" exists in the Phoenix PBM/Encore Agreement, the entire arbitration clause is void. Id. EBM further posits, that "[t]he clear language of subsection 8.5.1 demonstrates that the parties had an intention to limit certain disputes to not be resolved by arbitration, but instead by Court." Id. at ¶ 9.

EBM's challenge to the arbitration clause founders on the rocks of the Phoenix PBM/Encore Agreement's integration clause which provides that it is the "complete and final expression" of Encore and Phoenix's agreement:

> This Agreement constitutes the complete and final expression of the of the **agreement of the parties and is intended as a complete and exclusive statement of the terms of their agreement** and supersedes all prior and contemporaneous offers, promises, representations negotiations, discussions, communications, and agreements which may have been made in connection with the subject matter hereof.

(Docket No. 33-1 ¶ 9.2). (emphasis added). The First Circuit has repeatedly rebuffed efforts to reach beyond the four corners of agreements containing integration clauses. *See* IOM Corp. v. Brown Forman Corp., 627 F.3d 440 (1st Cir. 2010); Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10 (1ST Cir. 1996). In light of the integration clause, the omission of exceptions to the obligation to arbitrate simply means that none were agreed by the parties. Thus, clause 8.5 is an enforceable agreement to arbitrate between EBM and Phoenix.

The liberal federal policy favoring arbitration agreements is best served by holding the parties to the bargain they struck when they entered into the arbitration clause and the integration clause. A written agreement to arbitrate exists between EBM and Phoenix and it is enforceable.

**B. The dispute falls within the scope of the agreement to arbitrate:**

The arbitration provision in Section 8.5.1 of the Phoenix PBM/Encore Agreement applies to "**any and all disputes or claims related to or arising from this Agreement**." (Docket No. 33-1 ¶ 8.51) (emphasis added). Such language is "paradigmatic" of a broad arbitration clause. *See* Spinelli v. National Football League, 96 F. Supp. 3d 91, 100 (S.D.N.Y. 2015) (an arbitration clause covering any claim or controversy arising out of or relating to an agreement is the paradigm of a broad clause).

The First Circuit has interpreted broad language of this nature as covering "**contract generated or contract related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort**." Acevedo Maldonado v. PPG Indus. Inc., 514 F.2d 614, 616 (1st Cir. 1975) (emphasis added). That is, the First Circuit has rejected the labeling of controversies arising out of or relating to the contract to exclude them from the scope of arbitration. *See also* Mitsubishi Motors

<u>Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 105 S.Ct. 3346 (1985) (agreement to arbitrate "all disputes, controversies or differences which may arise between [parties] out of or in relation to [certain articles] of this Agreement or for the breach thereof" was sufficiently broad to encompass claims under the Sherman Act, Federal Automobile Dealers' Day in Court Act, Puerto Rico Dealers' Act and Puerto Rico antitrust and unfair competition statute); <u>Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.</u>, 1 F.3d 639, 642 (7th Cir.1993) (noting that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se").

Both EBM's claim for breach of contract and its claim for tortious interference with a contractual relationship arose out of, and are connected to, the Phoenix PBM/Encore Agreement or purported breaches of the same, particularly the obligation to provide information EBM avers it needs to comply with its own obligations to its clients. With respect to the claim for breach of contract, the *Complaint* avers that:

> **As stated above in the facts, for January 12, 2017, the parties entered into a contractual agreement in which Phoenix agreed to provide certain services to EBM clients in Puerto Rico in the healthcare industry, specifically under the 340B Federal Program. EBM has repeatedly called on Phoenix to specifically fulfill its contractual obligation**s. The notice sent by EBM to Phoenix on December 8, 2017 is one of the multiple occasions in which specific compliance of Phoenix

>obligations is requested.  **As of today, Phoenix continues to fail to meet their contractual obligations, thus depriving EBM from the information they need to be able to fulfill their obligations toward their clients.** Phoenix has acted in bad faith, in a planned manner and with the sole purpose of placing EBM at a competitive disadvantage and causing EBM to breach its obligations towards its clients.

(Docket No. 33-3 at 8-9) (emphasis added).  Turning to the claim for "tortious interference with a contractual relationship," the *Complaint* avers that:

>Phoenix recurrent malicious and tortious interference in EBM's contractual relationships with its clients have created a negative image of EBM and its way of doing business, thus affecting its reputation and its assets.  **The purposes of these acts, along with Phoenix's tactic of delaying the submission of the documents requested by EBM to meet their obligations toward their clients**, is to affect EBM's contractual relationships and to affect its image.  Phoenix has taken advantage of its position of power in order to undermine EBM and its services.  The strategy used by Phoenix is clear and evident, to such extent that, on multiple occasions, **EBM has begged for the information they need to be able to fulfill their commitment to their clients, and Phoenix has ignored those requests**.

Id. at 9-10 (emphasis added).

All told, the Complaint makes plain that the claim for tortious interference is also related to breaches of obligations under the Phoenix PBM/Encore Agreement and thus also falls under the scope of the broad arbitration clause in that agreement.

**C. Defendant has not waived the right to arbitrate:**

EBM has not contended that Phoenix waived its right to arbitration.  However, the circumstances of the case do not support

a finding of implied waiver.  Although the First Circuit has repeatedly recognized that a party may "implicitly waive its contractual right to arbitrate by engaging in litigation," it has also held that "[w]aiver is not to be lightly inferred." Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir.2001) (quotations omitted). Moreover, "mere delay in seeking [arbitration] **without some resultant prejudice** to a party cannot carry the day." Id. (emphasis added)

In this context, the Second Circuit has identified and defined two types of prejudice that can support finding that a party has waived their right to arbitration. Specifically,

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.

Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). In Kramer, the Second Circuit clarified that "[n]o bright line defines this second type of prejudice" and therefore it must be "determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." Id. The Sixth Circuit adopted this definition of prejudice and added that "[p]rejudice can also be found where a party has gained a strategic advantage by obtaining something in

discovery that would be unavailable in arbitration." Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 720 (6th Cir. 2012) (citing Stifel, Nicolaus & Co. Inc. v. Freeman, 924 F.2d 157, 159 (8th Cir.1991)).

In accordance with the above, in assessing whether a party implicitly waived their right to arbitration, federal courts traditionally take into consideration whether:

> (1) the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) the litigation machinery has been substantially invoked and the parties are well into preparation of a lawsuit by the time an intention to arbitrate is communicated; (3) there has been a long delay and trial is near; (4) the party seeking to compel arbitration has invoked the jurisdiction of the court by filing a counterclaim; (5) discovery not available in arbitration has occurred; and (6) the party asserting waiver has suffered prejudice.

Trout v. Organizacion Mundial de Boxeo, Inc., 2018 WL 4719104, at *4 (D.P.R. 2018) (citing FPE Found. v. Cohen, 801 F.3d 25, 29 (1st Cir. 2015)). *See also* In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004) (quoting Creative Solutions Group, Inc., 252 F.3d at 32-33; Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of New Hampshire, 671 F.2d 38, 44 (1st Cir. 1982)).

In this case, Phoenix invoked its right to arbitrate at the inception of litigation when it filed its November 11, 2018 Notice of Removal in Civil Case No. 18-1821 which was consolidated with the instant case. (Docket No. 29). *See* Trout, 2018 WL 4719104, at *4 (finding that the right to arbitrate is not waived by filing a

notice of removal, a motion to dismiss, or to transfer venue). Moreover, Phoenix moved to compel arbitration in this case **less than a month** after the Court denied its motion to dismiss for insufficiency of service of process or to quash service. (Dockets No. 31 & 33). *See* Creative Solutions Group, Inc., 252 F.3d at 33 (finding that defendant did not waive right to arbitration where it moved to compel arbitration two months after it was required to plead to the complaint and five months after plaintiffs filed the action); Rodríguez Font v. Paine Webber Incorporated, 649 F. Supp. 462, 464 (D.P.R. 1986)(finding that defendant did not waive arbitration by engaging in discovery or by waiting two years to file motion to compel arbitration, where affirmative defense of arbitration had been raised in defendant's answer). Furthermore, the Court also finds that Phoenix's compulsory counterclaim does not constitute a waiver of its right to arbitration. See Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 661 (5th Cir. 1995).[3] (holding that answering a complaint that included a compulsory counterclaim and exchanging Fed. R. Civ. P. 26 disclosure, in addition to removal to federal court and a motion to dismiss, did not "substantially invoke the judicial process" and therefore did not waive the right to arbitration).

---

[3] This case has been cited and applied by the First Circuit in Creative Sols. Grp., Inc., 252 F.3d at 33 and this District in Trout, 2018 WL 4719104, at *4.

Moreover, EBM did not claim or show it was prejudiced, either substantively or procedurally, by Phoenix's delay in moving to compel arbitration. A plaintiff must show prejudice to succeed in establishing implied waiver to the right to arbitrate. *See* Restoration Pres. Masonry, Inc. v. Grove Europe, Ltd., 325 F.3d. 54, 61 (1st Cir. 20013). Namely, EBM has not argued that Phoenix is seeking to improperly relitigate matters in arbitration, nor that its request for arbitration has resulted in undue delay or cost for EBM. See Kramer, 943 F.2d at 179.

   **D. EBM has not met the standard required for the Court to issue injunctive relief:**

EBM's submissions to the Court have failed to show irreparable harm, much less a short-term emergency that would justify that this Court issue an *interim* preliminary injunction while the arbitration machinery is set in motion. *See* Next Step Medical Co., Inc. v. Johnson & Johnson, Intern., 619 F.3d 67, 70 (1st Cir. 2010); Apindo Corporation of Puerto Rico v. Toschi Vignola S.R.L., 2018 WL 718437, *4 (D.P.R. 2018).

Indeed, **neither EBM's *Complaint* nor its submissions requesting preliminary injunctive relief are verified or supported by affidavits**. As explained by a leading Civil Procedure Treatise, "evidence that goes beyond unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." 11A Charles Alan Wright & Arthur R.

Miller, Federal Practice & Procedure § 2949 (3d ed. 2019) (citing Bossert v. Springfield Group, Inc., 579 F. Supp. 56, 58 (S.D. Ohio 1984)); Audette v. Town of Plymouth, MA, 858 F.3d 13, 24 (1st Cir. 2017); (Geshke v. Crocs, Inc., 740 F.3d 74, 78 n.3 (1st Cir. 2014) ("[U]nverified allegations in a complaint are not evidence."); Air Master Awning, Inc. v. Green Windows, Corp, 2018 WL 4715444, at *4 (D.P.R. 2018) ("[P]laintiff failed to present and support its request for preliminary injunction with anything other than its unverified allegations in the complaint, which are insufficient."); K-2 Ski Company v. Head Ski, 467 F.2d 1087, 1088-1089 (9th Cir. 1972)(a verified complaint or supporting affidavits may afford the basis for a preliminary injunction); Societe Comptoir De L's Industrie Cotonniere, Establissements Boussac v. Alexander's Dep't, Stores, Inc., 190 F.Supp. 594, 601 (S.D.N.Y. 1961)(only facts supported by affidavit can be considered in support of a motion for preliminary injunction).

Despite the Court's determination, EBM is not necessarily deprived of preliminary injunctive relief. In this case, the arbitrators are empowered to grant such relief if necessary. The arbitration agreement between the parties provides that the arbitration shall be conducted under the American Arbitration Association's ("AAA") Commercial Rules. (Docket. 33-1 at 6). Rule 37 of the AAA's Commercial Rules provides in the relevant part:

>   (a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.
>
>   (b) Such interim measures may take the form of a interim award, and the arbitrator may require security for the cost of such measures.

Arbitration Rules & Mediation Procedures, Rule R-37 (2013). Rule 38 of the AAA's Commercial Rules, in turn, contains expedited procedures for emergency relief.[4] Id. Rule R-38.

### E. Dismissal is appropriate:

Other judges in this district have repeatedly found that dismissal without prejudice is appropriate when all issues presented in the complaint are arbitrable. *See* Ideal Limited Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. 75, 78 (D.P.R. 1989); Sea-Land Services, Inc. v. Sea-Land of P.R., Inc., 636 F. Supp. 750, 757 (D.P.R. 1986) ("Given our ruling that all issues raised in this action are arbitrable, retaining jurisdiction and staying the action will serve no purpose."). Due to the fact that both Encore and Phoenix's claims are encompassed by the arbitration clause, dismissal, rather than a stay, is appropriate in this case.

### IV. CONCLUSION

For the foregoing reasons the Court **GRANTS** *Defendant Phoenix Benefits Management, LLC's Motion to Stay Proceedings and Compel*

---

[4] *See* https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf (last visited on November 12, 2019).

*Arbitration* (Docket No. 33) and orders Encore Benefits Management, Inc. to arbitrate its claims against Phoenix Benefits Management, LLC. Additionally, the Court **DENIES** EBM's *Motion for a Preliminary Injunction*. Lastly, this action is **DISMISSED WITHOUT PREJUDICE** as all claims made herein must proceed to arbitration. Judgment shall be entered accordingly.

    **IT IS SO ORDERED.**

In San Juan Puerto Rico, this 12th day of November 2019.

                                      S/ RAÚL M. ARIAS-MARXUACH
                                      United States District Judge